Summit Investment Management v. Connolly, Case No. 22-1297. Counsel, you may proceed. May it please the Court, Mr. Johnson, Mr. Connolly. My name is Chad Kabe and I represent the appellants in this matter. The appellants are Summit Investment Management, LLC, SBN EDGE, LLC, and SBN FCCG, LLC, and I'll try to reserve three to five minutes for rebuttal if I may. By and through this appeal, Your Honors, we're requesting the Court reverse and or vacate the orders granting the settlement, granting approval of the settlement agreements between the trustee, Summit Management, and Foot Locker. At its essence, this appeal, from my basis, is about basic notions of fairness and due process and the integrity of the judicial process. Parties need to be able to rely on the orders enforcing agreements and the court orders adopting them, and I will say in this case, Your Honors, we don't believe that occurred. Now, from a background standpoint, the entire case is complex, but from a people standpoint, it's fairly straightforward. We have a debtor that filed a Chapter 11 bankruptcy. The finding of the bankruptcy court was the precipitating factor for the bankruptcy filing was the Oklahoma District Court litigation. We have a debtor that was converted to Chapter 7, and Mr. Connolly was then appointed as Chapter 7 trustee. Again, a note, the precipitating factor for the bankruptcy filing was the Oklahoma litigation. The relevant parties to the bankruptcy court and the District Court action are Stratford Holdings, Foot Locker, the appellants, my clients, as well as the Hull Estate Trust. Otherwise, and importantly, there are only two other claims that were filed in the bankruptcy estate. There was a claim by the United States trustee for administrative fees in the Chapter 11 case and a marginal claim with regard to attorney's fees in a prior litigation. But otherwise, the parties were the parties from Oklahoma. Now, as the court knows, there are proofs of claims filed, and the proof of claims filed from Stratford were in the amount of approximately $20 million. Foot Locker, $21 million. Hull Estate, $1.2 million. Those proofs of claims garnered claim objections, and the claim objections is really what set this off. The claim objections were objections to the bankruptcy court being able to handle these matters because these matters were non-core and were circle-in-circle related claims. In fact, the parties, Stratford and Foot Locker, filed two motions for abstention. Those abstention motions said that the bankruptcy court did not have jurisdiction over these non-core claims and requested that the court abstain. Those two abstention motions were followed by three motions for relief from stay, followed by Stratford, Foot Locker, and the Hull Estate saying exactly the same thing, requesting the court grant relief from stay to move forward in the Oklahoma District Court. Based on comedy with the District Court, the fact that the District Court had been handling these matters for four to five years, and based on the fact that the bankruptcy court didn't have jurisdiction. And so that was request by the party, which was ultimately granted by the bankruptcy court, in what the bankruptcy court termed a pivotal ruling. That pivotal ruling granted relief from stay for the Oklahoma District Court to move forward deciding all of the debtors' claims, debtors' claims against and by other parties, including the appellants as well as Stratford and Foot Locker. And that continued in the Oklahoma District Court until the trustee, Stratford and Foot Locker, filed settlement motions. Those settlement motions were filed in the guise of 1919 settlement motions. And the settlement standard, fair and reasonable, and the trustee's business judgment is one of the reasons why those settlements were filed in the bankruptcy court rather than litigated in the District Court. And the bankruptcy court was fine, was accepting of these settlements, notwithstanding the fact that it granted relief from stay for exactly the Oklahoma District Court to do this job. And I note, and we noted in our briefing, that the bankruptcy court was frustrated. And I understand it's a long litigation. But the bankruptcy court note it is growing increasingly frustrated with the nature of what's remaining in the delay. Bankruptcy court also said, I'm really close to the point of considering vacating my order on granting relief from stay to move it here so we can resolve it here. And quite frankly, your honors, that's exactly what he did. He brought the matter from Oklahoma back under the guise of a 1919 settlement agreement. And really, that's the crux of our appeal. Our appeal, we list numerous issues of what we believe to be error. But in the end, it's about whether the bankruptcy court had jurisdiction to bring this matter back to the bankruptcy court. And secondarily, whether the bankruptcy court had jurisdiction to decide what we believe to be CERCLA and CERCLA-related claims. And we don't believe that the bankruptcy court had that jurisdiction. And those are the arguments that I'd like to concentrate on today. I'd obviously be happy to answer any questions with regard to our other arguments. But I do think that those are the seminal arguments before you today. We believe it was error to allow Stratford and Footlocker to settle with the trustee and liquidate their claims in the bankruptcy court. And I want to note for the record that when I was preparing for this argument, I was remiss in not listing a case in our table of cases. It's a case that was dealt with by Chief Judge Bremer and Ray Thompson in footnote 8 of his opinion. So Mr. Johnson is aware of it, and they've responded to it. But I do think it's appropriate, and I'd be happy to file any kind of supplemental briefing the court would like. If you'd like to file a 28-J letter to save some of your argument time, that would be fine. Very good. I will. And I'll just go to the high points. In its most condensed version, Judge Kaine dealt with a very similar issue. And he said, once a bankruptcy judge grants relief from the automatic stay for litigation to proceed in another court, it is an abuse of discretion for the bankruptcy court to contravene its prior order based on the interest of quicker administration of the bankruptcy case. Well, can I just stop you there? Certainly. So is that the standard of review you're asking us to apply here, abuse of discretion? And isn't that a very forgiving standard? It is. How do we understand how this possibly could be an abuse of discretion? Well, so if you go to the fair and reasonable standards under 1990, that is what the case law says the standard of review is. We're obviously saying that the court didn't have jurisdiction to enter orders after the relief from stay. So that is a different standard. I think that's a standard that you can look at from that perspective. Well, then I guess I'm right. What are you arguing? I'm arguing that the court did not have jurisdiction, so this court can look at this anew. De novo. De novo. Correct. And you're arguing subject matter jurisdiction. Subject matter jurisdiction with regard to the circle of claims as well as just Where has Congress stated that the automatic stay provisions affect the bankruptcy court's jurisdiction? I'm sorry, could you say that one more time? Where has Congress said that the automatic stay provisions affect the bankruptcy court's jurisdiction? Well, I don't know that I see it in Congress other than 28 U.S.C. Section 1334 grants the jurisdiction of the bankruptcy court title under and related to proceedings. And to the extent that the bankruptcy court granted relief from stay for these matters to be handled in the Oklahoma District Court, I don't think jurisdiction exists under 28 U.S.C. Section 1334. How did the court give up jurisdiction? It has jurisdiction under the statutes. Is there anything in the statutes that say that once there's an automatic stay, it lacks jurisdiction? Not under the 28 U.S.C. 1334 jurisdiction, but under the case law, Your Honor. I believe that the case law interpreting that provision as well as other provisions does say that the bankruptcy court gives jurisdiction as to the matter it granted relief from stay on. What's your best case? For relief from stay? No, for no subject matter jurisdiction. I think the statute in of itself, Your Honor. Well, you just said case law. I don't see anything in the statute that deprives the bankruptcy court of jurisdiction, whether there's an automatic stay or not. And then you said that the case law supports you. So what's your best case? Your Honor, the Thompson case that I cited to you or cited to the court right now, I think, addresses the issue from a 60,000-foot level, which is once the bankruptcy court grants relief from stay, it no longer has jurisdiction or alternatively should not exercise any discretion that it did have. Well, that's a different question. There's a question of whether a court has power to act, and then there's the question of whether it has discretion to act. Which one are you arguing? Well, primarily I'm arguing that there was no jurisdiction. And to the extent you disagree with that, I'm also suggesting, Your Honors, that the bankruptcy court shouldn't have exercised jurisdiction after it did what it did. And I think that's the case law that I'm pointing to that talks about the idea that once you grant relief from stay, it's really in the other court's jurisdiction to handle and resolve those matters. Could I just ask you, there's a lot of detail here. Sure. One question I've had has to do with the footlocker stipulation. Yes, sir. And that is that this is this argument that the parties have made about whether the stipulation that footlockers should be allowed its damages and costs from the Oklahoma case, whether that's appropriate under Section 502E2. Are you with me so far? I am. Good. Because it was allowed in the future, only when it's fixed in the Oklahoma case. Correct. Why isn't that a claim that would be fixed in the future rather than the present? Well, I think that's exactly what happened was the bankruptcy court didn't disallow that claim under 502E1B when it should have disallowed that claim. And because it didn't disallow that claim, then it allowed the trustee to allow a default judgment against the debtor. And then it said, come back to bankruptcy court. I'll allow a default judgment against the debtor. And then you file that in the Oklahoma district court. And then the Oklahoma district court determines that. So we have it going from bankruptcy court to Oklahoma court to bankruptcy court to the Oklahoma court. We don't think that should have been approved. Could you tie that argument to the statute and tell me why it doesn't comply with the statute? Well, I think all claims under 502E1B should be disallowed until later on. Instead, in this case, the 502E1B claim was not disallowed. Instead, it was allowed against the estate. It just was allowed to go further in the Oklahoma district court for liquidation purposes. I understood you to be making an argument about contingency. Am I understanding that correctly? Certainly. It's a contingent, unliquidated, disputed claim, Your Honor, and something that should have been decided by the Oklahoma district court. And that's my point, is that when relief from state is granted to do that, that's exactly what should happen. Your Honor, I note that I only have three minutes left. I'm happy to answer questions.  Certainly, Your Honor. You mentioned several times that CERCLA was involved in the Oklahoma court. Is that correct? Yes, that is correct, Your Honor. They're a CERCLA contribution. And it's my understanding that the bankruptcy court never considered CERCLA claims and did not adjudicate those claims. It was the other claims that were adjudicated by the bankruptcy court. Is that correct? Your Honor, I would respectfully disagree, and here's why. We have a piece of property that's worth $415,000, a contaminated property in Oklahoma. I'm not sure if I'm supposed to be looking there or over there. Apologies. I'll look here. And so, you know, under the measure of damages under Oklahoma, the value of damages to the property is the value of the property, $415,000. So we have claims worth $21 million, $20 million, and then ultimately a $6.5 million claim. What else are we dealing with if the measure of damages against the property is $415,000? Well, it's the indemnification CERCLA claims, the contribution claims. And so, Your Honor, I understand your question, but I disagree that the bankruptcy court was only dealing with and the district court was only dealing with contract claims. They were dealing with CERCLA claims as well. I hope that answers your question. And I'm going to reserve the rest, if I may, or if you have another question. Well, just to follow up, can you explain your position that the bankruptcy court actually determined CERCLA claims? It seemed to me it was determining the indemnification issue between Footlocker and Fogg, but the CERCLA claims themselves were still up for grabs in the Oklahoma case. And how I would answer that question is, Your Honor, again, going back to my example of the $415,000 property value for this property, the measure of damages is $415,000, and yet we have $6.5 million claims. So what are we deciding? What has the bankruptcy court decided? Well, they're not just deciding contract claims, because those contract claims, quote, unquote, included remediation costs, and the bankruptcy court found that. And so to the extent that we're talking about CERCLA remediation contribution claims, then I do believe the bankruptcy court decided CERCLA-related claims. And I will just, if that's okay, I'll reserve the 30 seconds I have left. You can do that. Thank you. Good morning, Your Honors, and may it please the court. Andrew Johnson, on behalf of Tom H. Connolly, in his capacity as Chapter 7 trustee for the bankruptcy case of Fog Cap Retail Investors, LLC. Mr. Connolly is with me at the council's table today. The factual and procedural route that brought this dispute to the court is certainly complex. With respect, however, to what the bankruptcy court did, it was simply to approve three settlements requested or proposed by the bankruptcy trustee. The bankruptcy court, in an oral ruling in which it approved the settlements at issue, made exhaustive, detailed findings of fact and conclusions. The transcript from that ruling spans 76 pages. In the appeal to the U.S. District Court, Judge Brimmer affirmed bankruptcy court's approval of the settlements at issue. Judge Brimmer's opinion is 47 pages, and Mr. Connolly, the appellee, believes that Judge Brimmer's ruling was well-reasoned and should be affirmed. With respect to the precise issues before the court, jurisdiction for an Article I court, which a bankruptcy court is, is determined by the statutes that Congress has passed. That is 28 U.S.C. 1334 and 28 U.S.C. 157. It is in those statutes that Congress gave district courts and the bankruptcy court the power to, among other things, determine the allowance or disallowance of claims. That is precisely what the bankruptcy court did with these settlements. These settlements deal with the allowance and the disallowance of claims. A case cited in the appellee's response brief, in Ray Junk, identifies the distinction between adjudicating claims and approving a settlement of those claims. The two are not the same thing. What the bankruptcy court did in approving these settlements was only that, to approve the settlements. In the bankruptcy court's order, the written order, in the bankruptcy court's oral ruling, and in the actual settlement agreements at issue, there is prophylactic language, as the bankruptcy court described it, to prevent any preclusive effect from the approval of these settlements in the Oklahoma litigation. In fact, the agreements and the court's order contemplate that the Oklahoma litigation will, in fact, continue and the claims, to the extent that they need to be adjudicated, will be resolved in that form. Counsel, didn't the order granting relief from the stay contemplate that the issues addressed in the stipulations should be determined in the Oklahoma case? Your Honor, my answer to that is in 28 U.S.C. 1334, there is concurrent jurisdiction for certain matters. The allowance of claims, I believe, is a matter that arises in or arises under the bankruptcy code or in a Chapter 11 case, and so there is concurrent jurisdiction. The claims that exist in the Oklahoma court certainly have some impact on the allowance of claims in the bankruptcy case, but they are not exactly the same thing, and what the bankruptcy court did was allow, through the settlement agreement, a claim for Stratford Holdings LLC in the amount of $6.5 million, but without impacting or precluding the claims as they would go forward in the Oklahoma U.S. District Court case, Your Honor. With respect to relief from stay, that is simply a green light for non-bankruptcy forums to continue litigation that may have existed prior to the initiation of a bankruptcy case. There isn't anything in the order granting relief from stay that would require the trustee to litigate to a conclusion in the Oklahoma court. There isn't anything in the order granting relief from stay that would prohibit the trustee from settling and seeking approval of those settlements in the bankruptcy court. Counsel, could you address the question that I raised with Mr. Cavy, and that is this disagreement between the parties about whether the footlocker stipulation violated Section 502E1 because the claim was contingent at the time of its allowance. I need some help from both of you on that, so could you address that issue? Yes, Your Honor. As the court is noting, Section 502E prevents the allowance or requires the disallowance of contingent claims for contribution that at the time of the allowance were not yet fixed. I believe that the settlement agreement with Footlocker, just like the settlement agreement that the bankruptcy court approved for Appellant's Summit Investment Management and SBN FCCGLLC, provides for allowance at a future date, but for the present, the allowance amount is zero. That is effectively disallowance. Allowance at zero is no different from the trustee's perspective and I think as well from the language of 502E, Your Honor. Is that the rationale that the district court gave? That was one part of the opinion I didn't find exhaustive, but are you in agreement with that analysis? Your Honor, I believe that the district court's analysis is correct and I think if the court were to look at it in the record, it's the trustee's proposed corrected interim distribution. What the court would see is that Footlocker would receive nothing. That is effectively disallowance, Your Honor, but yes, I believe that the district court accurately reached an accurate conclusion. With respect, Your Honors, to what it is that the bankruptcy court... I'm sorry, I interrupt again, but I realize I've got a follow-up that's related and it has to do with the fog caps entry of judgment in favor of Footlocker in the Oklahoma proceeding. My question there is, did the bankruptcy court really even need to approve that? I mean, couldn't fog have done that on its own in the Oklahoma litigation without having it be approved as part of the settlement agreement? Your Honor, I think that is accurate and I think the bankruptcy court reached the same conclusion because the evidence presented to the bankruptcy court was that there was no reasonable basis to dispute liability. So I think what the bankruptcy court concluded was that there was simply no defense to be made, period. And whether it was approved as a settlement or the trustee simply did not respond because there was no good faith response that could be made, the result would be the same. But I believe as part of a settlement, it is appropriate to provide notice that that would occur to the parties in this case. So from that perspective, yes, it is appropriate, I think, for the bankruptcy court to approve it. I asked my questions whether it was necessary. I understand your argument, but I take it that the answer is it wasn't necessary. It was not necessary. With respect to the issue of jurisdiction, which the appellants have identified as a de novo review, this court, of course, has to identify whether subject matter jurisdiction existed. But I would like to point out again to the court that that issue was not raised with the bankruptcy court. There was no dispute. There was no objection about the bankruptcy court's jurisdiction to approve or consider the settlement at issue. I would note as well that... Well, counsel, I just have to stop you there. We have to look at jurisdiction no matter whether it was raised. Isn't that correct? That is absolutely correct, Your Honor. I am pointing it out only for the purpose of identifying that the issues that the appellants raised, that is their preference, that the Oklahoma litigation continue and that the trustee continue to litigate was made. It was simply not identified as a jurisdictional issue. The same thing is true, Your Honors, with respect to the alleged adjudication of CERC or claims. Again, what the bankruptcy court did was approve settlements that relate to the allowance or disallowance of claims in the bankruptcy case. The prophylactic language in the agreements, the prophylactic language in the order, and as the bankruptcy court noted in its extensive oral ruling, prevented any preclusive effect or impact on the Oklahoma litigation. What the bankruptcy court considered in terms of the first factor that bankruptcy courts consider the probable success on the merits was solely under contract-related theories that Footlocker and Stratford had against the debtor. Those were the lease agreement, the purchase and sale agreement, and the assumption agreement. CERCLA, any time that it's mentioned in the bankruptcy court's oral ruling, was to identify it as not terribly helpful information because it did not relate to the theory of liability or the theory of damages on which the trustee was proposing the settlement. Could you respond to Mr. Cavy's argument about, I asked him about the CERCLA claims and he responded in part by referring to the value of the property, $415,000. Could you respond to that argument? Yes, Your Honor. I would like to refer to the bankruptcy court's oral ruling because I think the bankruptcy court was very thorough in this regard. It looked at the relevant agreements between the debtor and either Stratford or Footlocker. It identified the relevant provisions, which the bankruptcy court paraphrased as, in essence, binding the debtor to the lease agreement with Stratford and requiring that the debtor indemnify Footlocker. They have nothing to do with CERCLA, Your Honor. Those were purely contract claims and the damages that the trustee identified were solely related to past costs. So those potential damages, irrespective of what evidence there may be in the record about the value of the property, are independent. That is, the contract damages are not tied to the value of the property any more than the obligations that the debtor had under those relevant agreements are tied to the value of the property. As a final point, Your Honor, not raised in argument, but the opponents have asserted that their individual rights were impaired in the approval of this settlement agreement. The trustee believes that the bankruptcy court and the U.S. District Court accurately identified that the only issue was whether the claims would be allowed in the bankruptcy case. And the cases that the trustee cited identify that creditors do not have individual rights as it relates to the amount of allowance or disallowance of claims in the bankruptcy case. So, Your Honor, the appellee, Mr. Connolly, would request that this court affirm the District Court and the Bankruptcy Court. Thank you, Your Honor. Thank you. Counsel, before you sit down, Judge Kelly, do you have anything further? No, thank you. Thank you, Counsel. Thank you. Good morning again. I know I have very limited time, but I did want to respond with regard to what I believe Mr. Johnson, as well as Bankruptcy Court and District Court, consider to be big issues with this prophylactic language. But I would suggest to you that the prophylactic language, that nothing in the bankruptcy will impact the Oklahoma District Court, is illusory. And we see that because we already see that the default judgment that the court was asking about previously has been entered by the Bankruptcy Court or allowed the trustee to enter it into the Oklahoma District Court. To suggest that the Oklahoma District Court is not going to be impacted by these bankruptcy proceedings and these settlement agreements is, quite frankly, just a little bit far-fetched for me because it already has been. Counsel, do you contest the bankruptcy, of course, determination of a very, I think the words were, a very high probability that Fogg is liable to fill Parker for indemnity? Yes, we do. And another reason why this should have been decided in Oklahoma. Let me give you an example, if I might, very shortly. To the extent that this property is worth $415,000, which the testimony is such, what if, for instance, a hypothetical, what if the District Court comes back and says, you know what, Fogg Cab is only liable for a million or a million and a half of that. Well, what's the impact on the estate? Well, it's significant because Stratford's already been paid $2.3 million. My client has an estimated claim at zero that's subject to reconsideration under 11 U.S.C. Section 502J and 3008 of the Federal Rules of Bankruptcy Procedure. So my client is in the money at that point. So it's a significant issue with regard to my client's liability, or my client's ability to collect from the estate. Thank you, Counsel.  Thank you, Your Honor. Thank you, Your Honor. Thank you to counsel on both sides. We appreciate your arguments this morning. The case will be submitted and counsel are now excused. Thank you.